All right, we'll call the first case. 15-0070, people of the state of Illinois. Will both attorneys that are going to argue for the presentation today step up and identify yourselves for the record. Good morning, Your Honors. Brad Chalka from the Office of the State Appellate Defender on behalf of the defendant appellant, Farron Lewis. Good morning. Good morning. Assistant State's Attorney Lee Sand, for the police, appearing on behalf of the people of the state of Illinois. Good morning. All right, each of you will have about 15 minutes to present your argument from that. You may save up some time for rebuttal, counsel. Yes, please. All right. Mr. Chalka, you may proceed. Good morning again, Your Honors, and may it please the court. Again, my name is Brad Chalka from the Office of the State Appellate Defender, and I'm here on behalf of Farron Lewis. This case primarily concerns faithful application of the Supreme Court's low threshold for uncounseled petitioners at the first stage of post-conviction proceedings. Adhering to that framework, Mr. Lewis has made an arguable claim that counsel was ineffective for failing to investigate and present evidence. Mr. Chalka, I don't want to throw you out of my way, but did we have any evidence? I know he claimed that he tested negative for chlamydia. Did we have any evidence? I assume he had access to his own medical records, correct? According to his petition, I think I would dispute that. His petition states that the records were kept by Cook County Department of Corrections. There's nothing in the record to indicate that he was ever given those records. In fact, one of the specific failings of counsel that is alleged in this case is a failure to procure those records on his behalf. And his trial counsel never requested any type of medical expert with regard to the transmission rate of the victim and the defendant. Is that correct? That's correct, which is, again, another one of the failings that is alleged as counsel's arguably deficient performance. And the lawyer didn't order any or didn't study or obtain any information that would indicate whether or not sexual contact of the nature in this case would result in the contraction of chlamydia? That's correct, and that's really the key failure of counsel in this case, and exactly the failure that Mr. Lewis has alleged in his post-conviction petition. So we know from his petition that he alleges, and we have to accept these facts as true, that he tested negative for chlamydia. He tested negative at least three times while he was in Cook County Jail. Counsel? Do we accept as true, though, anything about what the medical testimony or scientific testimony would be regarding whether or not you would contract chlamydia from sexual intercourse with another individual? Is it 100% of the time? And in this case, we also had a discrepancy that the victim was unsure whether he used a condom. Would that affect the transmission? Is it more likely than not, or is it absolute? I think in theory all of those facts would go to the strength of Mr. Lewis's ultimate claim at, say, a third-stage evidentiary hearing, or ultimately as a matter of convincing a jury of the weight to assign to this evidence. But at the first stage of the proceedings, Your Honors are correct to say that the petition doesn't allege those facts. But under the standard announced in Allen, it doesn't have to be people versus Allen. Well, okay. Forgetting about certainty, is there any medical literature or any evidence that would support anything that you're saying? Not in the petition as it's written. Okay. But is there anything out there? I would imagine there is. And I think that what we would need in this case, again, at a third-stage hearing or at a possible new trial is — Is that a problem, though, that you've just said you would imagine? I don't think so, because what we're talking about is what we expect Mr. Lewis to know and what we expect him to allege in a post-conviction petition, not whether his claim is ultimately capable of corroboration of proof at the third stage or at an ultimate new trial. And so when we think about these facts, these facts do certainly go to the strength of his ultimate claim. But they don't go to whether or not he's adequately pled at the first stage an arguable claim of deficiency and prejudice, sufficient to advance to the second stage where he would have counsel to procure the information that his trial counsel failed to procure and that would ultimately support his claim were it to go to the third stage or a new trial. Well, for purposes of the prejudice prong, do we have to have something that would say that if you're exposed to chlamydia, you would contract chlamydia and, therefore, this information would have actually supported both, you know, prongs of the ineffective assistance? I think, again, and not to be repetitive, but ultimately to support the ultimate proof of Mr. Lewis's claim, I think the answer is yes. But the state's own brief cites the CDC fact sheet regarding chlamydia and notes that it is a sexually transmitted disease. So we know that it is transmitted by sexual contact. And then we look to Mr. Lewis's petition and we know that he repeatedly tested negative. And we know from the trial record that the complaining witness had tested negative. What if Mr. Lewis said that he had some type of injury which prohibited him from having any kind of sexual ability? Is that enough for him to just say that? And then we have to take that as true and then give him an attorney and give him a lawyer or they're the same thing, give him a doctor to examine him. I mean, at what point do we say you just saying it isn't enough? I think that wouldn't be enough. But what we have in this case is more than that. Why wouldn't that be enough? That's a defense. I'm incapable of sexual conduct. Why is that not a defense to break? I think it would be a defense. But even at the first stage, we can't. The first stage is not. You haven't stated an arguable claim based on a bare allegation. But what we have in Mr. Lewis's petition is more than that. He's asserted that these records exist. He's asserted that his counsel knew about them and failed to obtain them. So what he's alleged is that, well, he doesn't know the specific medical foundational facts at the time of the pleading for the post-conviction petition. His claim is capable of corroboration were he to be appointed counsel at the second stage. Are we sure that when the judge actually allowed the state's motion in limine to preclude the introduction of the positive test for chlamydia and then the attorney argued to the judge, the very facts that we're going to accept is true, the judge acknowledged that there were negative test results. Wasn't his ruling actually based on the rape shield statute? I think that was what the ruling purported to be based on, but in part because there wasn't sufficient information provided by counsel as an adequate offer of proof to overcome the rape shield statute. Well, isn't that what you've argued is in the previous, I don't know, was it Rule 23? It wasn't from this panel, but I don't know if it was. I think it was Rule 23. It was. But in the actual record, doesn't it indicate that the judge based his ruling on the rape shield statute, not on a lack of offer of proof? Yes. Yes, but then when we look at this Court's Rule 23, we see that the reason that this Court or another panel of this Court couldn't pass on the correctness of that ruling for the very fact that there wasn't a sufficient offer of proof to know whether or not the trial court had in fact abused its discretion in granting the motion in limine. But didn't the Court in that same decision say that because there was nothing to suggest that a negative chlamydia test would in any way support a claim of ineffectiveness that it's affirmed? Doesn't it say that? No. There's no mention of ineffectiveness at all. I'm sorry. Not ineffectiveness. Sure. I apologize. The ruling. The ruling. Right. Isn't the ruling here that the Court denied introduction of the chlamydia because there was nothing to suggest that you would contract chlamydia based on sexual contact? Yes. And that ruling begs the exact question in this case. Why wasn't there sufficient evidence to overcome the rape shield statute? Why was the judge bound to apply the rape shield statute? And it's because counsel was ineffective for failing to seek out this information and even procure the medical records. I don't know. Don't you think you have a little problem because the information isn't really information? We don't know what you're actually suggesting, do we? Is there anything in the record that suggests what you're saying, that there would be some kind of evidence of contraction of the sexually transmitted disease by another person because they had intercourse with another individual? Nothing in the record. And, again, that points to the failure of the exact failure of counsel in this case. Had counsel sought out that information, it is at least arguable. How is it arguable? Well, because we know from the state's own citation to the CDC fact sheet about chlamydia that it is transmitted by sexual contact. And so when we have a positive chlamydia test and a negative chlamydia test and we look at those test results in the context of this case where there was alleged sexual contact between the complaining witness and Mr. Lewis, we know that at their minimum there is a chance of transmission by sexual contact because the disease is transmitted sexually. And so when we take those facts and we situate them in the context of the remaining trial evidence, it is at least arguable that the confidence in the outcome, the jury's guilty verdict, is undermined. Now, I don't think the parties have really explored this, but it doesn't seem like there's an Illinois case regarding this particular issue, chlamydia, and in the context of a rape shield statute. So knowing that neither of you actually did any out-of-state research, are you aware of the great weight of authority regarding this very issue of the transmission of chlamydia in light of a rape shield statute in the numerous jurisdictions outside of Illinois? Yes. Yesterday and this morning I did read some of the out-of-state authority. Just to become aware of it, there is at least one unpublished case from Illinois that I'm aware of. There is? Yes. Not that we can refer to yet. Right. Sure. But is there a chlamydia case? Yes. It's a chlamydia case. It's actually in the context of post-conviction and it's actually in the context of first-stage post-conviction. And it was allowed to go forward? Well, this court originally affirmed the trial court's dismissal at the first stage and then in light of people versus Allen, it was asked, the Supreme Court summarily reversed and asked the court to reconsider. And then this court reversed and remanded for second-stage proceedings in light of Allen. So, of course, we can't cite that as authority. But what about out-of-state? Are you aware of the greater weight of authority that actually says that under other statutes in other states where they have a rape shield statute that the introduction of the sexually transmitted disease of chlamydia and where the defendant also had evidence of not contracting the chlamydia, that the greater weight of authority indicates that the rape shield statute weighs in favor of not introducing or allowing the introduction of the evidence, positive evidence of chlamydia by the victim and the negative test results of the defendant? Are you aware of that? Yes. So that there's this greater weight of authority that rules against you? Yes. I think in the out-of-state cases do suggest those, do contain those rulings. But our Supreme Court has interpreted our rape shield statute in a very specific context, in a very specific way. So in People v. Patterson, what our rape shield statute seeks to keep out, and I'm going to quote, and Patterson was quoting People v. Sandoval, is, quote, evidence of specific acts of sexual conduct. So we're looking at evidence that on some prior occasion, the complaining witness had engaged in some sort of specific act with someone else and the defendant is trying to get that information before the jury to suggest that because of those prior acts, there was either no sex in this case or the sex was consensual or something along those lines, to draw an inference from those unrelated acts and to try and cast aspersions on the complaining witness in a particular case and suggest that either there was no sex or, again, that the sex was consensual. But then we look to this court's decision in People v. Anthony Roy W., which was in the context of ineffective assistance of counsel. I don't believe it was a post-conviction case. But counsel was found ineffective for failing to present testimony that on a prior occasion, the complaining witness in that case had had sex with another person and that evidence would have been relevant to explain the physical evidence in that case, notably a perforation on the complaining witness's hymen. And that case found counsel ineffective even where the evidence that was sought to be admitted was going to a specific act but was explaining some sort of physical evidence. And it's critical in this case that the type of evidence that is being sought to be admitted does not actually go to any specific prior acts of sexual conduct by the complaining witness. But is that general misconduct by the victim? Well, I don't think misconduct could be the right word at all. The leader weight of authority where it's been actually considered says it really goes directly to the heart of that issue, that evidence that a victim, male or female, having contracted a sexually transmitted disease is exactly opposite of what the rape shield statute is designed to protect. I'll give a cautious yes to that answer. And the reason it's a cautious yes is because my reading of those cases is that those are very specifically tied to the text and the Supreme Court in those states' interpretation of their particular rape shield statutes. And so a lot of rape shield statutes are written and interpreted to prevent the admission of evidence that is a lot more broad than the sort of specific acts of sexual conduct that our Supreme Court has said our rape shield statute covers. And so without full briefing on the issue, I don't want to opine in too much depth. I'd be happy to supplementally brief the out-of-state authority if the Court is interested in that. No, I think that that could have been something that was done by the parties long before this morning's argument. But Illinois interprets our rape shield statute in a much more specific context. What did they do in the Patterson case? Did they allow the introduction of that evidence? And specifically, what was that evidence? Right. So in Patterson, they did not allow the introduction of that evidence. But there were a couple things that distinguished Patterson. What was the evidence first? The evidence was that cervical inflammation found occurred three days prior to the incident. Counsel wanted to get that cervical inflammation into evidence to suggest as an explanation for the presence of semen. So it was to imply or really directly state that there had been a sexual act three days prior that led to the cervical inflammation that explained why semen was found. But there was no allegation in that case that sperm was present by defense counsel. And, in fact, the defense counsel just wanted to ask questions about it. And so there was nothing even close to the specificity that we have in Mr. Lewis's petition where the records of the negative result exist. Counsel was aware of those records, and counsel failed to get those records and present them to the trial court for the purposes of overcoming the rape shield statute. So Patterson, I think, actually supports Mr. Lewis's claim because it shows the type of conduct that the rape shield statute is really designed to keep out, and that is evidence of past sexual actions that led to specific evidence, that led to, well, Patterson, not even specific evidence, but just general assertion. Well, how do you reconcile that, then, when a jury is told that the victim had chlamydia? What does that mean? She had some kind of sexual conduct, or she was engaged in some kind of sexual conduct? Maybe even this record doesn't show that, but there's certainly medical scientific evidence out there to suggest that generally, I mean, I don't think I'm going out on a limb here, that if you have a sexually transmitted disease, that it was transmitted from sexual conduct. Yes. And so I think that is a fair inference, but there's a lot of information that the bare assertion of a medical diagnosis for chlamydia does not show. It does not show the number of prior sexual encounters. It doesn't tend to cast aspersions on the complaining witness's promiscuity. It doesn't – there's a lot of things it doesn't suggest. And I would suggest to this Court that this – Is it only about promiscuity, the rape shield statute? Is that really one of its primary purposes? No, it's to avoid humiliation and embarrassment of the complaining witness. All those things. Yes. And to avoid a suggestion that based on prior sexual acts, the complaining witness would have possibly consented in the relevant – in the present case. And so when we look at Anthony Roy W., and I would point this Court very specifically to that case, it's similar to this case in that it's even more poignant evidence than this case because it does refer to a specific prior act of the defendant with a specific – the presence of certain physical evidence. And so that was – that case was litigated in the context of Strickland. This Court found both deficient performance and prejudice for counsel failing to present that evidence to the finder of fact and reversed the defendant's convictions in that case. And so we have a similar allegation here. It's a bare medical diagnosis. Of course, because of the nature of the medical diagnosis, it is a little more – but there's a lot of ways that that can be neutralized. There can be the crafting of limiting instruction for the jury. Defense counsel can be admonished not to argue certain inferences from the chlamydia diagnosis. And so when we're talking about a bare medical diagnosis for a positive chlamydia test compared to a bare medical diagnosis for a negative chlamydia test, when we look at those next to each other, when we know that chlamydia is a sexually transmitted disease, that tends to show or at least suggest that there was no sexual contact on the date in question. How would we know that without anything linking that up? How would – there's no basis for that. One, there's no basis other than the defendant's allegation that he didn't have chlamydia. There's no basis for that. And there's – we don't know that. And the trial judge didn't know that. But what the trial judge did know and what he extensively went through in his written finding was that the argument that she has chlamydia violates the rape shield statute. And I just don't see the defendant making any allegations somehow overcoming that. Well, as a matter of law, this category of evidence, I would – it does not violate the rape shield statute. And I would point the Court again to Anthony Roy W., People v. Patterson, for the type of evidence that does. Was it a sexually transmitted disease? No. What was it? In Anthony Roy W., it was evidence that the complaining witness had had a specific sexual encounter with another person on a prior occasion that was going to be introduced to explain the perforation of the complaining witness' hymen. Right. So it was actually more directly covered by the policy of the rape shield statute because it went to a specific prior act with a specific person other than the defendant. And the Court still found that it was ineffective for trial counsel to not seek out that information and introduce it to the jury. And so, again – Wasn't his defense originally consent? Consent was pled in at least one or two of the answers to discovery. But counsel's opening statement very clearly said to the jury, there is – the evidence will show – But when the trial judge ruled on the motion in limine that consent defense was in play, is that correct? Counsel – yes, I think counsel was still reserving the possibility of the consent defense but also made clear at the litigation on the motion in limine that counsel was reserving the right to proceed on the defense of no sexual contact at all. And that was the theory that was actually ultimately put before the jury. And it's that context in which we should look at the prejudice analysis, which is when we have these comparative diagnoses and we put them before the jury, given the theory that counsel was advancing, does this have a tendency to undermine confidence in the outcome where the jury would look at these comparative diagnoses and be able to draw the inference that no sexual contact occurred in this case? Then your client's position in this case, just to be clear, is that there is scientific evidence that there is a high rate of transmission of chlamydia between the person who has chlamydia and the person who doesn't. And that his lawyer was deficient, for one, not submitting the proof of the negative and the positive. And the lawyer was also deficient for not submitting the scientific evidence that would show the limit of the rate of transmission. Yes, I think that's a correct statement of what Mr. Lewis's petition states. And I think that goes really to what the matter is. What is the rate of transmission? I'm unaware of the rate of transmission. I would imagine, again, that if this went to a third-stage hearing or a new trial, that would be something that would not be within the purview of a layman to testify about. This would need to come in either through expert testimony or through stipulation. And the trial lawyer didn't bring that information in. Right, but that was the down part. Right, which is the exact deficiency. At what point does it prove prejudice? You know, we're just saying, I'm looking at it now, what's the prejudice? You're saying that we should go forward to see whether there's prejudice or not. Right, and one of the reasons that that's the position is because this is such specific medical foundational evidence that's beyond the purview of a layman, it seems out of step with the Supreme Court's instructions on the first-stage proceedings to expect an uncounseled pro se petitioner to be able to know those facts, first of all, and then plead them in a pro se post-conviction petition. Is there any case, though, that actually allows for advancing a petition based on speculation? Not pure speculation, but people versus anyone. Well, any speculation. I mean, couldn't you have attached something? I don't believe that I would be permitted to attach further evidence beyond the record. Well, I think we've seen attachments before that have suggested. And we usually yell at you for it. Yes, we do. We may slap you a little bit and say, no, you can't do that. We're not doing it to the trial record. You can bring other stuff in. Right, but the real contention, though, is that what do we expect of a first-stage petitioner? What do we expect a petitioner at the first stage, unrepresented by counsel, to know and then to allege? And then when we look at the first-stage petition, what we see is Mr. Lewis is aware that his medical records exist. He has asserted facts that we must take as true, that those contained in either version. And I think facts that we'll definitely take as true are, no doubt, chlamydia is a sexually transmitted disease. We'll take that as true. Now, we'll take as true that he tested negative. He's made those affirmance, and we're going to accept those as true. Absolutely. All right. No problem with that. Now, what else do we take as true? That actually chlamydia is transmitted by sexual contact on all occasions or that in 50 percent of the chances, chlamydia with a one-time sexual intercourse between two people will result in the transmission of chlamydia. Are we going to take these things as true? Not at this stage. I would have to concede that those facts are not contained in the petition. But we also know, then, from where you want us to go. I mean, we're happy to do it. If you can give us some things that we can accept as true. Well, so we have – there are several things in the petition that we accept as true. I'll go through them. But they are also in the context of a liberal construction of the pleadings. And so when we look at Mr. Lewis's petition, and we see that he's alleged that he's tested negative three times for chlamydia while in the Cook County Jail, those records exist. He's also alleged that his counsel was ineffective for failing to provide the scientific evidence that would support his petition. On a liberal construction, pleading those facts makes no sense unless he believes that those facts are capable of corroborating his claim. And so if he thought those facts were going to be detrimental to his claim on a liberal construction of his petition, he likely wouldn't have pled them. I think we can fairly presume that he would not have pled those facts if he thought that those facts were going to destroy his claim. Well, I think he pled the facts that he thought, you know, she had chlamydia, I tested negative, ergo I didn't really have any sexual contact with her. Right. And so he, again, so he pleads the facts that he thinks will support his claim. We liberally construe those facts. We take the fact that he didn't get any scientific information through the assistance of his attorney as true. And then we look at that in the lens of the ultimate trial and say, well, if everything in here is true, and if the missing scientific evidence supports his claim as he seems to believe it has alleged, then we look at that negative chlamydia test, compare it to the positive, with the knowledge that chlamydia is a sexually transmitted disease, and we say what would a reasonable jury, what inference would they draw? And what do we do with the judge's ruling? Let's assume for purposes of argument today that actually the judge denied this because he concluded based on, he may have been reviewing the out-of-state cases, I don't know. But let's assume that he made his ruling based on his knowledge of the law and the rape shield statute, and he said, yes, she has chlamydia. You've tested negative for not having chlamydia. I believe that this violates the rape shield statute. Therefore, I'm not letting it in. How is any lawyer ineffective because the judge rules correctly? Well, again, the submission is that the judge didn't rule correctly, and this court in its Rule 23 on direct appeal noted that the reason that it couldn't verify whether the judge had ruled correctly, it never reached the issue of the merits. Your argument is that the reason the judge did rule correctly, and he ruled correctly based on evidence that he had before him, but if he had evidence that his lawyer should have considered, he would have ruled the other way. Well, he would have ruled the other way or his ruling would have been error. And that's all the evidence that we don't have, though, the evidence that Mr. Lewis had. You would contract chlamydia if you had sexual contact with another person. Yes, the evidence that Mr. Lewis has alleged that his attorney should have sought out. Well, is there anything you want to add at this time? I don't think so. We'll certainly give you some time for rebuttal. Thank you. All right. Let's hear from the State. May it please the Court, Ms. Hanford-Leese, Assistant State's Attorney, appearing on behalf of the people of the State of Illinois. The trial court properly dismissed defendant's pro se post-conviction petition as frivolous and patently without merit. Despite the fact that this court on direct appeal laid out a road map for the defendant as to what was missing, what needed to be provided, specifically transmission, rate, incubation period for chlamydia, despite the fact that he was given this information, defendant still has failed to attach. Did he take this petitioner from his cell, wherever he is, to assemble the scientific information about rate of transmission and submit other evidence about the transmission of chlamydia from his cell, wherever he is? According to the Act, defendant is required to either attach the support, his evidence, or explain his absence. Defendant has done neither of those two things. With regard to the question of what defendant could have attached, absolutely. The Act doesn't require him to go out and pay an expert on STDs. At the very least, the defendant could have done a Google search. Isn't that obvious that he's not going to get an expert to testify in this case? Well, again, how is he going to do a Google search? I've been in every division of Cook County Jail, and they are not sitting at computers all day long. I'm not sure where you're getting that one. He could have requested someone else to do it for him. He could have written a letter to the CDC and asked for a pamphlet on chlamydia. He could have found some kind of book in the library. There's stats out there that defendant could have attached to his petition. Because at this point, we are in no better shape than this court was on direct appeal. But do you know what the rate of transmission is? I do. How do you expect him to know? Pardon me? How do you expect him to know? You know lawyers have been trained. It's his burden. And professional. Absolutely. And his burden. But you're professional, and you don't know. So how do you expect him to know? Well, I'm not offering that information to the court. Because at this point, we need to look at what the defendant has offered to the court to be able to make a decision here today. And we don't have any more information than was given to us on direct appeal. Those counsels aren't going to make sense. We don't know. This all may go away on the second stage once the information is given. But do we, you know. Right. Isn't that the way our society should function? If we have a claim that on the face may be meritorious, that could be easily disproven. Well, to do that. Why don't we let it be disproven? Right. To do that and allow him just to go on a fishing expedition in the second stage would basically nullify the requirements of the first stage. Well, it's not really a fishing expedition. It's a scientific thing. If they come back and say, well, it's 50-50, I mean, that's not really a fishing. Well, on the other hand, if the evidence is that it's highly infectious and that almost certainly a contact will result in the transmission of that disease, then that's important in this case. It is important. The scientific evidence is important in this case. And that is why it needed to be attached to the petition or he needed to explain why we didn't do so. He didn't do either of those two things. And for that reason, that justifies dismissal on that reason alone. If he had done those things, and let's say he had some information on transmission rates and he had his negative test results checked, so just run with me for a minute. If he had attached those things, would that still have violated the rape shield statute? Would Judge Wattis' ruling still have been correct based on the rape shield statute? Well, it's hard to make that determination without knowing what those rates are. You're saying if he comes back and has scientific evidence saying it's 100% transmission rate any time you have somebody who's infected, then that wouldn't violate the rape shield? The trial court would then determine and balance the interest of the victim and balance the appropriate value of this evidence and then determine at that point whether it violates the rape shield statute. Certainly, if it's 100% transmission versus 0% transmission, there's going to be a different result. But we can't, in order to determine whether there's prejudice here, whether there's an effective census council claim, even to determine that, we can't do that. It's all based on speculation and conjecture, which a certain claim cannot be based on. Well, what if this gentleman, we weren't there at the incident, what if this gentleman, how is he ever going to show this transmission rate? I mean, he's going to sit there for 15 years and he's saying, if I had this information, this could have changed my trial and the transmission rate. My theory and my petition is correct. When is this ever going to be aired? Well, what he needed to do, he had two years since this court on direct appeal. And I'll remind the court of what was determined on Rule 23. Lewis refers to no expert evidence regarding the incubation period or the transmission. Lewis argues that the incubation period is a non-issue because he claims he never had chlamydia. He points to no evidence showing that he never had the disease. Given the absence of this evidence, that Lewis's test would have provided a relevant result, we cannot conclude that the trial court aired. He had two years since this Rule 23, two years to find something to attach to his petition. And he did nothing. What about counsel's argument that your information in the record, that chlamydia is a sexually transmitted disease, suggests that it's sexually transmitted and he didn't have it? Well, it's essentially some relevance to show that this crime didn't occur. The defendant's arguing that a negative result in and of itself is relevant to overcome the rape-assault statute. A negative test alone proves nothing. And the defendant is also presuming that these statistics would be in his favor, which we don't know because he has not attached them to his petition. So this court is in the same position as it was in direct appeal that we don't have this information, despite the fact that he had two years to attach something, or explain why he didn't attach it when he hasn't had done. I thought he said something about being in jail was prohibiting him from filing it. He made that argument in the way it was read, that it was related to why he didn't attach his medical records and why he wasn't able to get documents of his test. Well, we're going to assume all that's true. We're going to assume that she had chlamydia, and we're going to assume that it's true that his tests were negative. I think we can do that. I don't know what else we can assume, though. We can't assume anything else at this point. Well, I don't know. That's obviously the question of the day. Absolutely. So not only did the fact that he didn't attach this or offer any excuse for why he didn't attach that, he's unable to establish an arguable claim of ineffective assistance of counsel where he cannot establish prejudice because we really have nothing more to look at at this point than we had on direct appeal. Thank you. If there's no further questions, for those reasons and for those contained in the People's Brief, we respectfully request that this Court affirm the trial court's dismissal of defendant's petition. All right. Thank you. Mr. Jericho, a brief rebuttal. The State uses a lot of third-stage language to argue the reason that Mr. Lewis's first-stage petition should be dismissed. The State asserts to this Court that we cannot, quote, determine prejudice, that the negative result proves nothing, and that he cannot establish a claim of ineffective assistance of counsel. Are there cases out there that talk about whether or not an ineffective assistance claim can actually be based on speculation, not in the record? No, the cases do say that an ineffective assistance claim can't be based on bare speculation. And that goes to my second point on rebuttal, is that the State has argued that when... And don't those same cases say that when you're presenting an ineffective assistance claim based on pure speculation, that you can't meet the second prong either? That's a correct statement of the law, but the State has suggested to this Court that we're no better off than the trial court in determining whether or not there was arguable prejudice in this case. And we have several facts that weren't before the trial court. We know the number of times that Mr. Lewis was tested. We know for a fact that those records exist within Cook County Jail. And we know that counsel was aware of the existence of those records and... Sure. And the judge actually, if you look at the record, he accepted all that as true. He accepted that as true when he ruled. And he said, I'm not going to let this in because it violates the Rape Shield Statute. And he obviously had to balance the statute's intent, whether or not there was a constitutional requirement. That's another thing the parties haven't really discussed. I'm not blaming anyone, but this issue has arisen actually numerous times in the United States. This very issue, chlamydia and non-contraction of chlamydia and Rape Shield Statute, which is in most states actually almost identical to Illinois' Rape Shield Statute. But I guess I have to say, is there any case that you would suggest to us that would allow us to conclude that a lawyer is ineffective when he doesn't... when there's speculation in the record about what this actual contraction rate is, if anything? There's no case that specifically concludes that exactly. I would, again, appoint this Court to Anthony Roy W., where we have similar considerations of the Rape Shield Statute and counsel's ineffectiveness on direct appeal. But what we're talking about when we're looking at the incubation rate and the transmission or the incubation period and the transmission rate is things that go to the strength of Mr. Lewis' claim. Where are you getting all this stuff about incubation? I don't know where you're possibly getting it from. The strength of his claim. How are we going to do that on this record? Are you barred from filing a successive PC? I'm unsure at this time. A defendant can file a successive PC with some kind of information. It would include the incubation period for chlamydia, whether or not it's possible to contract it based on sexual contact. I mean, is there anything? Actual innocence. An actual innocence petition. Well, I mean, I'm not even talking about actual innocence. I'm talking about, you know, just this taking the ineffective assistance argument. And I don't disagree with Justice House as far as actual innocence. But there's nothing that precludes a subsequent successive petition based on ineffective assistance of counsel where you have to show cause and prejudice. But you would show that there is such a thing as an incubation period. There is some medical testimony that would support what you're trying to say. All those things. I mean, is there anything that really prohibits that? No, but Mr. Lewis has alleged that there is information out there about the incubation period and transmission rate in his petition. That claim is in there. That counsel failed to get that very information. So we know that the incubation period and the transmission rate is relevant. But what that's relevant to is the strength of the inference drawn from the comparison between the negative and the positive result. It's not relevant to the sufficiency of the pleadings at the first stage. And so for those reasons, we would ask that this court reverse and remand for second stage proceedings. All right. We will take the case under advisement. It was well-argued, well-briefed. Thank you for your presentation. We're going to switch panels now for the next case.